

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

February 19, 2023

By ECF
Hon. Allyne R. Ross
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   **Re:**   *United States v. Mohamed Tahlil Mohamed et al.*, 18 Cr. 603 (ARR)

Dear Judge Ross:

   The Government respectfully submits this letter to preclude certain expected testimony from Dr. Nancy Franklin, an expert witness set to testify about witness identifications for defendant Abdi Yusuf Hassan ("Hassan" or the "defendant"). As set forth below, portions of Dr. Franklin's proposed testimony have no basis in the record—such that Dr. Franklin's testimony on these topics is neither relevant nor helpful to the jury. Consistent with the Court's prior orders, the Court should also preclude Dr. Franklin from testifying about "DNA exonerations," an unduly prejudicial concept that has no relevance to this case.

## I.  Relevant Background

   On August 3, 2020, the Court granted Hassan's motion to introduce expert testimony about eyewitness identifications from Dr. Franklin. (Dkt. No. 79 (the "Order")). In the Order, the Court made clear that certain of Dr. Franklin's proposed conclusions "are inadmissible because they usurp the role of the jury," and directed that Dr. Franklin "may not testify as to legal conclusions, or directly comment on the reliability of an eyewitness." (Order at 16). The Court also emphasized that Dr. Franklin's testimony must fit the facts of the case, noting that "[i]f it becomes clear that one or more of the factors Dr. Franklin plans to testify about does not fit the facts of the case, I will preclude testimony on that particular factor." (*Id.* at 15 n.1). Finally, the Order directed Hassan to submit a revised affidavit from Dr. Franklin, consistent with the Court's rulings. (*Id.* at 17).

   After Hassan submitted a revised affidavit from Dr. Franklin (*see* Dkt. No. 83), the Court issued another ruling on August 25, 2020, finding that "certain portions of the [revised] affidavit continue to usurp the role of the jury and such statements will not be admissible at trial." (Dkt. No. 89 at 1). The Court further noted that Dr. Franklin's "testimony will be limited to eyewitness identification factors which I find relevant to this case," clarifying that "[a] factor will be relevant only if there is a sufficient factual predicate presented at trial." (*Id.* at 1-2). The Court also directed Dr. Franklin to remove from her affidavit several terms, including "guilt," "innocence,"

"perpetrators," "suspects," and "wrongful convictions," because use of these terms "risks juror confusion, bias against the government, or usurping the role of the jury." (*Id.* at 3).

On August 31, 2020, Hassan submitted a third affidavit from Dr. Franklin. (*See* Dkt. No. 90 ("Franklin Affidavit" or "Franklin Aff.").) On October 20, 2022, Hassan submitted a letter to the Court, indicating that Dr. Franklin will not testify about the following topics originally included in the Franklin Affidavit: "Event Stress, Weapon Presence, Multiple Persons, Partial Disguise or Trained Observers." (Dkt. No. 177 at 1). The Government has inquired from defense counsel on several occasions as to whether, in light of the testimony at trial, any additional topics from Dr. Franklin's affidavit will be excluded from her trial testimony. To date, defense counsel has indicated that it has not removed any additional topics from Dr. Franklin's testimony.

## II.     Applicable Law

Federal Rule of Evidence 702 establishes that "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion." Fed. R. Evid. 702. The party who is proffering the expert testimony bears the burden of demonstrating that it is admissible. *See Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987). In determining the admissibility of expert testimony, the trial judge serves a "gatekeeping role" and must "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 597 (1993). Indeed, expert testimony must be relevant to the issues of the case; as the Supreme Court noted in *Daubert*, expert testimony regarding "the phases of the moon" may be relevant to a trier of fact's understanding of "whether a certain night was dark," but barring evidence supporting a link between the moon and the facts at issue, the same testimony would be irrelevant and inadmissible. *Daubert*, 509 U.S. at 591; *id.* at 597 (trial judge has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand"). This "fit" requirement calls for scientific validity to link the expert testimony and the facts of the case. *Id.*

Federal Rules of Evidence 401 through 403 provide that relevant evidence is admissible when it tends to make the existence of any fact that is of consequence more or less probable than it would be without the evidence, but may be excluded if its probative value is substantially outweighed by, among other things, the danger of unfair prejudice, confusion of the issues, and misleading the jury. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595.

## III.    Discussion

### A. The Court Should Preclude Several Portions of Dr. Franklin's Proposed Testimony

The Court should preclude the following topics from Dr. Franklin's testimony because there is no basis in the record to support their admission:

- **Franklin Affidavit ¶¶ 24-25—Post-Event Suggestion:** There is no basis in the

2

record for Dr. Franklin's proposed testimony regarding post-event suggestion. Both Michael Scott Moore and Special Agent Elisabeth Granberg testified at length about Moore's 2019 identification of Hassan from a six-person photo array, and both were robustly cross-examined about the circumstances of the identification. (Tr. 487-89, 491, 572-575, 1123-1130, 1188-1198). Even after these extensive cross-examinations, there is not even a hint of suggestion or impropriety in the record. On the contrary, the record is clear that the 2019 identification procedure was not suggestive. (*See, e.g.*, Tr. 487 (Moore testifying that, before his 2019 identification, the FBI agents did not "tell [Moore] anything about the individuals depicted" or "suggest in any way that any of these individuals were involved" in Moore's kidnapping); *see also* Order at 7 (rejecting Hassan's arguments about suggestiveness in the 2019 identification procedure, and noting that "[t]hese speculations are not grounded in any specific evidence, but instead are mere hypothetical possibilities.")). Given the utter lack of evidence in the record of suggestiveness, testimony from Dr. Franklin about the harm caused by "suggestive comments and behavior by those investigating the case" (¶24) would do nothing more than invite the jury to speculate that there was misconduct, contrary to the sworn testimony provided at trial. Accordingly, the Court should preclude Dr. Franklin's testimony about post-event suggestion.

- **Franklin Affidavit ¶¶ 27-32—ID Administrators' Knowledge of Who the Person of Interest Is in an Identification Procedure (Non-blind procedures):** There is similarly no basis in the record for Dr. Franklin's proposed testimony regarding the potential "contaminating effects" that could follow from non-blind identification procedures. (Franklin Aff. ¶¶ 27-32). While this factor might be relevant if there were any evidentiary basis to conclude that Moore's identification was contaminated by law enforcement misconduct, it would be wholly inappropriate to permit expert testimony about hypothetical "ways in which ID administrators can verbally and/or non-verbally steer witnesses toward a particular person." (*Id.* ¶ 29). As the Court has already noted, "the fact that the identification procedure was conducted by the same agent who would later swear to the complaint, a factor that may not square with best law enforcement practices, [does not] raise more than speculation that there could have been undue suggestion." (Order at 7). Accordingly, before permitting any expert testimony about the effects of suggestion by the administrator of an eyewitness identification procedure, the Court should require the defense to show some basis in the record to conclude that such suggestion was in fact present in this case. The Government submits that no such basis exists. As the Court appropriately noted in one of its pretrial rulings on Dr. Franklin's testimony, "[a] factor will be relevant only if there is a sufficient factual predicate presented at trial." (Dkt. No. 89 at 1-2). Because there is no factual predicate in the record for testimony about the "contaminating effects" of non-blind procedures, the Court should preclude this plainly prejudicial testimony.

- **Franklin Affidavit ¶ 40—Showup Procedures:** Lastly, there is no evidentiary foundation for testimony about the unreliability of showup procedures. As the literature attached to the Franklin Affidavit makes clear, "The basic distinction between lineups and showups is that lineups embed the suspect among known-

innocent fillers whereas showups do not use fillers and instead simply present the suspect alone. There is no debate among eyewitness scientists about the fact that lineups produce better outcomes than do showups, whether the outcomes are measured in terms of diagnosticity ratios or measured using signal-detection based methods." (Dkt. No. 71-3 at 206). Here, the agents showed Moore a lineup, not a showup, and Moore did not identify Hassan in the courtroom (other than Moore's testimony about the 2019 lineup identification). There is therefore no basis in the record for testimony about the unreliability of showup procedures, which will only confuse jurors who are undoubtedly unfamiliar with the specific terminology used in the academic literature surrounding eyewitness identification.

**B. The Court Should Preclude Dr. Franklin From Testifying About "DNA Exonerations" At Trial**

The Court should also preclude Dr. Franklin from testifying about "DNA exonerations," a topic she discusses in paragraphs 8, 28, and 39 of the Franklin Affidavit. The Court already precluded Dr. Franklin from using other similarly charged concepts and terms during her testimony and should do so again here. (*See* Dkt. No. 89 at 3 (precluding Dr. Franklin from testifying about "guilt," "innocence," "perpetrators," "suspects," and "wrongful convictions," because use of these concepts "risks juror confusion, bias against the government, or usurping the role of the jury")). Introducing to the jury the inapposite concept of "DNA exonerations," which has no bearing on the facts of this case, is unduly prejudicial and should be precluded under Federal Rule of Evidence 403. Furthermore, nothing in Dr. Franklin's expertise or scientific study allows her to make such a characterization. Guilt or innocence is a question of fact for the jury based on all of the evidence in a case. Even divorced from the context of opining directly on Hassan's guilt or innocence, allowing Dr. Franklin to convey her opinions by reference to individuals wrongfully convicted and ultimately exonerated through DNA analysis will improperly convey to the jury that her testimony goes directly to guilt or innocence, and not to the more limited question of whether an eyewitness identification is reliable. Indeed, the jury may conclude that a defendant is guilty based on all of the evidence presented at trial, even if it retains doubt as to whether a particular witness correctly identified that same defendant. Accordingly, the Court should preclude Dr. Franklin from testifying about DNA exonerations during her testimony.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:      /s/
Sam Adelsberg   / David W. Denton Jr. / Gillian Grossman
Assistant United States Attorneys
(212) 637-2494 / 2744 / 2188

CC: All defense counsel (by ECF)